SHORTESS, Judge.
Sam B. Domiano (plaintiff) filed suit against Patricia Gennardo (defendant); her insurer, State Farm Mutual Automobile Insurance Company (State Farm); and his own underinsured motorist carrier, Allstate Insurance Company (Allstate) for damages resulting from an automobile accident. Plaintiff’s suit was consolidated with the State of Louisiana’s suit against defendant and her insurer for recovery of workers’ compensation benefits and medical expenses paid to plaintiff. Allstate’s third party demand against the State and its insurer, Travelers Insurance Company (Travelers), was dismissed when Travelers proved that underinsured motorist coverage had been specifically waived by the State. Allstate’s third party demand against defendant to recover any damages for which it might be found liable was also heard with this case.
Acting within the scope of his employment as a Hammond State School ambulance driver and attendant, plaintiff and another employee were returning to the campus in the School’s five-passenger wheelchair van after transporting a resident to Woodland Park School November 12, 1981, when the accident occurred. Domiano was either stopped or stopping for left-turning traffic in the lane in front of him when defendant, traveling 15 miles per hour in the following car en route to her 8:00 class at Southeastern Louisiana University, didn’t realize he was slowing or stopping, slammed on her brakes and skidded thirty feet into the rear of the van. The investigating officer classified damages to the van as light (bent rear bumper and rear doors which would not open) and to defendant’s car as moderate (damage all the way across the front).
Trial by jury was held and a verdict was returned in favor of defendants and against plaintiffs. In answer to special interrogatories, the jury responded in pertinent part:
1. Was the defendant, Patricia Gennar-do, negligent?
YES ✓ NO _
1(a). Was the defendant’s negligence the proximate cause of plaintiff’s injuries?
YES_ NO ✓
1(b). If the answer to No. 1 or 1(a) is no, proceed no further; if yes, proceed to the next interrogatory.
The remaining interrogatories pertaining to negligence or amounts of damages to compensate plaintiff for medical expenses, lost wages or general damages were left blank. When polled, all twelve jurors replied that this was their verdict.
The trial judge rendered judgment on the jury verdict, in Domiano v. State Farm, in favor of Gennardo and State Farm, dismissing both Domiano’s suit and Allstate’s third party demand against Gennardo and, in State v. Gennardo, for Gennardo and State Farm, and against the State, with Domiano cast for all costs. After denial of a motion for a new trial, plaintiff Domiano perfected this devolutive appeal, but the State failed to appeal and judgment against it is final.
The primary issue on appeal is whether the jury erred in determining that defendant’s negligence was not the proximate or legal cause of plaintiff’s injuries.
FACTS
The van plaintiff was driving was struck from behind by defendant’s automobile and knocked forward. Plaintiff’s vehicle did not strike the car stopped fifty feet ahead of him, nor did plaintiff physically hit anything inside the van. Although he told those at the accident site that he was not injured, within approximately two hours after he returned to work, plaintiff began experiencing neck and back pain. His family doctor had the day off so he went to see a Dr. Caulfield, an internist, whom he saw twice before Caulfield referred him to an orthopedic specialist, Dr. Larry Ferachi.
*752 Plaintiff was examined four times by Ferachi between November 30, 1981, and January 4, 1982. Initially, Ferachi diagnosed his condition as pre-existing early degenerative arthritis at the cervical level, acute cervical and lumbosacral strains, and prescribed physical therapy, cervical traction, heat, diathermy, massage and medication. He was given Butazolidin, an anti-inflammatory medication; Norgesic Forte, a muscle relaxant; and Tylox, for pain. By December 14, Ferachi noticed much improvement and continued therapy and medication. When plaintiff complained of increased pain on December 18, 1981, Ferachi discontinued the exercise program for his lumbar spine. Still having trouble with his lower back when Ferachi saw him for the last time, January 4, 1982, plaintiff was told to resume his exercise program and remain off work until he saw plaintiff again.
Ferachi agreed that taking anti-inflammatory medication and muscle relaxants could mask or hide any muscle spasm that might exist in a patient and that although a normal rate of expected recovery would be six to eight weeks, it was possible for some patients to follow erratic recovery patterns or reach a plateau before making further progress. He also agreed that a patient with degenerative arthritic changes was more prone to difficulty from trauma than someone without arthritic change. Ferachi felt that he had no reason to question plaintiffs honesty and did find muscle spasm and limitation of motion.
Still taking the prescribed medication but feeling that treatment and eight physical therapy sessions were providing only temporary relief, plaintiff sought treatment from another orthopedic specialist, Dr. Michael Edward McCutcheon, then practicing in New Orleans. McCutcheon’s deposition was read into the record. Plaintiff saw McCutcheon four times, from January 19 to April 13,1982. Plaintiff told him that he had begun experiencing headaches and that his back pain worsened when sitting and standing, and sometimes when lying down. In addition to the mild spondylosis (arthritis), normal for a 46-year-old man, McCut-cheon found post-traumatic lumbar spine pain and muscle spasm. While not diagnosing him as totally disabled from his work as dispatcher, McCutcheon did not want plaintiff “driving an ambulance if he physically had to lift the patients from bed to gurney, from the gurney into the ambulance.” McCutcheon said, “I thought he could drive, but I didn’t think that he could handle patients.” On March 16, 1982, he thought plaintiff could return to work by March 29. After an unexplained episode of nearly passing out while driving, plaintiff saw McCutcheon on April 13, 1982, and was told to return to work on April 19. DAMAGES
Domiano missed work from November 13, 1981, the day after the accident, until April 19, 1982, for a total of five months and three days, losing $6,580.00 in wages. His medical bills, which were stipulated, were $1,085.25. In addition to the loss of income and medical bills, plaintiff sought general damages.
He testified that he had intermittent pain, took extra strength Anacin during the day and Doan pills at night and that physical work exacerbated his problems. Plaintiff testified that he could only ride his tractor three or four hours rather than all day as he previously could and was not able to operate his plastic machine to lay plastic at all due to sharp pain and nausea felt upon turning his neck.
Plaintiff suffered objective injuries which surfaced after the accident. Although he was never hospitalized, plaintiff was treated by three physicians. The testimony of the two orthopedic specialists verifies that they found symptomatology which convinced them that plaintiff was injured as a result of the accident. Their testimony is in agreement and uncontradicted.
CONCLUSIONS
The jury was not clearly wrong in its answer to interrogatory 1(a) finding defendant negligent. The uncontradicted testimony was that defendant struck plaintiff’s vehicle. A driver striking another vehicle from the rear is presumed to be *753 negligent. La.R.S. 32:81; Eubanks v. Brasseal, 310 So.2d 550 (La.1975). Defendant produced no evidence to rebut this presumption of negligence.
The jury was clearly wrong, however, in finding in its answer to interrogatory 1(b) that defendant’s negligence was not the proximate cause of plaintiffs injuries. Our primary purpose in going to such lengths in the recitation of facts is to demonstrate that the only reasonable conclusion a trier of fact could draw from the evidence presented to it was that defendant’s negligence in following too closely and failing to maintain proper control of her vehicle caused her to collide with the rear of the van being driven by plaintiff. That negligence did in fact cause the injuries to his neck and back.
Under the mandate as expressed in Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975), since we have the entire record, we must determine the damages which plaintiff suffered as a result of this accident. Initially we note that plaintiff’s lost wages and stipulated medical expenses were $7,665.25.
His medical picture can be explained very simply. He suffered a cervical and lumbo-sacral strain which temporarily aggravated a mild pre-existing spondylosis. He returned to work on April 19, 1982, five months and three days after the accident. An award of $2,000.00 will do substantial justice for these mild injuries.
Accordingly, we affirm the jury’s verdict as to negligence and the dismissal of Allstate but reverse as to Gennardo and State Farm for failing to find that defendant’s negligence was the proximate cause of plaintiff’s injuries and cast them, jointly and in solido, for $9,665.25, together with legal interest thereon from date of judicial demand until paid and for all costs of this litigation.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
EDWARDS, J., agrees with the majority opinion’s reversal and rendering in favor of the plaintiff on the issue of liability, but I would award a greater amount of several damages.