480 So.2d 766 (1985)
Robert G. HARDY, et ux., Plaintiffs-Appellees,
v.
Ronald L. WHITNEY, et al., Defendants-Appellants.
No. 84-657.
Court of Appeal of Louisiana, Third Circuit.
October 1, 1985.
*767 McNeely & Kidd, Hugh E. McNeely, St. Martinville, for defendants-appellants.
Paul J. Demahy, St. Martinville, for plaintiff-appellees.
Before STOKER, LABORDE and YELVERTON, JJ.
*768 YELVERTON, Judge.
This is an appeal from a judgment in favor of the makers of a promissory note, against parties who assumed that note, in a suit based on the contract of assumption. The defendants have appealed raising several issues. For reasons which we will hereafter explain, we find merit in only one issue raised, which has to do with whether defendants' responsibility is joint or in solido. Additionally, however, on our own motion (La.C.C.P. art. 927), we note that the plaintiffs, makers of the unpaid note sued upon, being neither the holders of the note nor having themselves paid the note, have established no basis for a judgment ordering the payment of the note to them by the defendants. We could dismiss the suit on an exception of no right of action. However, we find on the record that the facts alleged and proved, as well as the law, support the conclusion that the plaintiffs are entitled to a judgment of specific performance against the defendants, ordering defendants to pay the debt sued upon to the party to whom it is owed, Teche Bank & Trust Co. We do this under our broad powers to render any judgment which on the record is just, legal and proper, and we shall recast the judgment accordingly. This, together with an amendment recognizing that the obligation of each defendant is joint rather than in solido, are the only changes we will make in the judgment.
Plaintiffs are Robert and Peggy Hardy. Defendants are Ronald Whitney and B.R.P. Brokerage, Inc. The Hardys are the makers of the promissory note sued upon. In a contract between them and the defendants, the defendants assumed the payment of that note. The holder of that unpaid note is Teche Bank & Trust Co., not a party to this lawsuit.
The facts, in more detail, which gave rise to the issues presented by this appeal, began on August 19, 1979, when Robert and Peggy Hardy executed a collateral promissory note in the amount of $10,000, bearing interest at 12 percent per annum, made payable to Holder or Holders, secured by a collateral mortgage note on their home. They pledged this note and mortgage to Teche Bank & Trust Co. to secure a debt which they owed to the bank.
On January 5, 1981, the Hardys, who owned certain rights, title and interest in the businesses known as Cajun Supply and Cajun Rags, in St. Martinville, as well as some shares of stock in B.R.P. Brokerage, Inc., entered into a written contract conveying the business property and shares of stock to B.R.P. Brokerage, Inc. Part of the consideration for that sale, as expressed in the contract, read as follows:
"The assumption of the payment of a TEN THOUSAND AND NO/100 ($10,000.00) DOLLAR note made payable to Holder or Holders and signed by Robert G. Hardy and Peggy Hardy and which is secured by a mortgage of immovable property located on Aline Street in St. Martinville, Louisiana which is payable at the Teche Bank and Trust Co. by B.R.P. BROKERAGE, INC., and RONALD L. WHITNEY."
The enforcement of defendants' obligation of assumption created by the above quoted contractual language is the purpose of this lawsuit.
To continue with a narration of the facts as revealed by the record, it appears that on January 5, 1981, the date the above contract was entered into, there was in existence a hand note executed by Mr. Hardy, owed to the bank, in the approximate amount of $9,000.00. We say "approximate" because the record does not specify the hand note and its balance in existence on the exact date of the contract of assumption, but the record does show that just two months later, in March of 1981, a renewal of that hand note was executed for $9,035.67, payable at the rate of $222 a month for a year, followed by a "balloon" payment for the balance. Since that was a renewal note, we believe it is safe to assume (no one has contended otherwise) that there was a hand note of about this amount in existence on the date of the contract of assumption; it was established by the testimony that this hand note, whatever its *769 amount, was secured by the pledge of the collateral mortgage note for $10,000.
The president of Teche Bank & Trust Co. testified that the original hand note secured by the collateral note and mortgage was executed in 1979, and that it had been renewed four times, once on March 25, 1981 (this was the renewal for $9,035.67 just discussed); again on March 25, 1982, this renewal for $8,126.69; once more on October 15, 1982, for $7,690.28; and finally on April 15, 1983, for $7,619.53, the latter renewal calling for interest at 14 percent per annum until paid.
It is for this last hand note balance of $7,619.53 that the Hardys filed their present suit. The suit was filed on November 4, 1983, against Ronald Whitney and B.R.P. Brokerage, Inc., alleging that the holder of the note, Teche Bank & Trust Co., had demanded the full balance owed on the note, $7,619.53 plus interest, and that defendants had failed to pay the balance due in accordance with their obligation of assumption resulting from the January 5, 1981, contract. The plaintiffs prayed for judgment in their favor and against the defendants ordering the defendants to pay them the amount of the note plus interest. The trial court gave judgment to the Hardys against the defendants, in accordance with their prayer, for $7,619.53 plus 14 percent interest from April 15, 1983, the date of the latest hand note renewal.
Defendants raise three arguments on appeal. One is that the obligation assumed was limited to the August 29, 1979, collateral note for $10,000, and that, if plaintiffs are to prevail, they had to prove some indebtedness was owed on this collateral note. From this premise, defendants argue that there was no proof the collateral note was in arrears. They argue furthermore that it was improper to receive evidence regarding the subsequent hand notes, as these were not evidence of the obligation assumed by them.
The second issue raised by appellants concerns whether Ronald L. Whitney, individually, assumed the obligation explained in the above quoted portion of the contract.
The third issue is whether the trial court was correct in finding that the obligation between Whitney and B.R.P. Brokerage, Inc., for the payment of the note was a solidary one.
Addressing these issues, we have no hesitation agreeing with the trial court that the language of the contract of assumption, however inarticulate, can only be interpreted to mean that the defendants bound themselves to pay the balance due on the hand note given to the bank by the Hardys as of January 5, 1981, secured by the collateral note and mortgage described in the contract. The tenor of the contract permits only one reasonable construction, and that is that the defendants assumed whatever obligation was owed by the Hardys and secured by that collateral note up to its limit, but no higher. Clearly, had the Hardys owed hand notes in excess of the $10,000 collateral mortgage note at the time of their contract, the defendants could not be responsible for any amount in excess of their assumed amount of $10,000. On the other hand, if the Hardys had owed less than the $10,000 (which was in fact the case here), it could not be seriously contended that the defendants assumed an indebtedness that did not exist, i.e., the difference between what was actually owed on the hand note then outstanding, and the $10,000 collateral note. These conclusions flow from the nature of a collateral mortgage note. It, and the mortgage which secures it, are pledged to secure another debt. A collateral mortgage note is not itself a primary evidence of indebtedness. See First Guaranty Bank v. Alford, 366 So.2d 1299 (La.1979). To give effect to the defendants' argued position regarding their assumption of the collateral mortgage note would be equivalent to saying that they assumed no obligation at all. To determine whether the Hardys have met their burden of proof in the present case, to show that there is an unpaid assumed obligation by the defendants as a result of the contract of January 5, 1981, we need only determine *770 whether, as of that date, there was in existence an indebtedness owed by the Hardys to the bank, and whether the $10,000 collateral note and mortgage was pledged to secure that indebtedness.
The record clearly shows that there was such a hand note, amounting to approximately $9,000, and that the collateral note and mortgage was pledged to secure it. Whatever this exact amount was at the time of the contract would have been the obligation assumed by the defendants. That determination is not important to a resolution of this case, because plaintiffs are suing on a considerably reduced amount. Supporting their demand for $7,619.53, plaintiffs alleged in their petition that the amount sued for took into account a number of payments by defendants between 1981 and 1983, an allegation curiously denied by defendants. There is no evidence in the record, one way or the other, concerning who made the payments; they were made, because the principal was reduced. Again, we need not be concerned about that either, because plaintiffs are content to demand only the amount unquestionably currently due, and that is the principal balance, $7,619.53, and interest, on the renewal on April 15, 1983. The president of the bank testified that this was the amount owed, and that it had not been paid, and we regard this proof as abundantly sufficient to satisfy plaintiffs' right to relief to that extent.
The second issue raised on appeal, that Ronald L. Whitney is not personally liable on the obligation of assumption, is based on the argument that he signed the contract only in his capacity as president of B.R.P. Brokerage, Inc., and not separately in his individual capacity. We agree with the trial court that the case of Advertiser, Division of Independent, Inc. v. Tubbs, 208 So.2d 340 (La.App. 3rd Cir.1968) is dispositive of this issue, and that Whitney is personally obligated under the contract. First, the contract language itself, quoted above, clearly indicates that B.R.P. Brokerage, Inc., and Ronald L. Whitney were assuming the payment of the obligation. Second, the contract was signed by Ronald L. Whitney, and, although it is clear that he signed in his capacity as president, it is also clear from his signature that he knew what he was signing. In Advertiser, supra, the president who signed a contract in his capacity as president of the corporation only, was held personally liable despite the fact that there was a blank provided in the contract for individual liability which the corporate president did not sign. The court found that a provision in the Advertiser contract that an officer signing on behalf of the corporation personally guaranteed payment of any debt incurred under the contract in default of the corporation, was enough to render the president personally liable. In our present case, the language employed in the quoted provision above shows that not only was the assumption of the obligation to be made by someone else in addition to the corporation, but that that person, the defendant Ronald L. Whitney, was actually named in the contract. We agree with the trial court that Whitney is personally liable.
The remaining issue argued by the defendants concerns the solidary nature of the defendants' obligation. They argue that the contract provides for a joint obligation between the defendants and not a solidary obligation. We agree.
Several Civil Code articles relative to obligations are involved in this determination. No change in the law resulted from the 1985 revision regarding these articles. When there is more than one obligor named in the same contract, the obligation it produces may be either joint or solidary. Article 1786. When several persons join in the same contract to do the same thing, it produces a joint obligation on the part of the obligors. Article 1788. However, an "obligation is solidary for the obligors when each obligor is liable for the whole performance." Article 1794. The solidarity of an obligation is not presumed; a solidary obligation arises from the clear expression of the parties' intent or from the law. Article 1796.
*771 Both B.R.P. Brokerage, Inc. and Ronald Whitney agreed to assume the payment of the collateral note, but the agreement does not contain a clear expression of the parties to be solidarily bound for the note. In such a case the obligation is considered to be joint, and the liability of each obligor in a two-obligor contract is limited to his virile share, one-half. See Johnson v. Jones-Journet, 320 So.2d 533 (La.1975). We will amend the judgment accordingly.
We come finally to the question of whether we can allow the judgment to stand, in its present form, which in effect gives a judgment to the Hardys on an unpaid promissory note of which they are the makers. They are not the holders of the note, they have not paid it; it is still outstanding and unpaid. The holder of the note is the Teche Bank & Trust Co. Although a judgment ordering the defendants to pay them the note was what the Hardys prayed for, and what the trial court ordered, we seriously question whether the plaintiffs have the right, under the circumstances, to that precise relief. Moreover, although it might appear one way of doing justice in the case, it occurs to us that allowing this might create the possibility that the defendants would have to pay the debt twice. La.Civil Code art. 1821 embodies what has long been the law of this state, that when an obligor and a third person agree to an assumption by the latter of an obligation of the former, and the agreement is in writing, it is enforceable by the obligee against the third person. If we sanction a judgment in favor of the Hardys (the obligors) against a third person (the defendants), and the defendants thereafter paid the Hardys and the Hardys did not pay the bank, conceivably the bank (the obligee) could again demand recovery from the third person, since this agreement of assumption was in writing. We think that the plaintiffs' relief should be cast in a different way.
Our procedural law recognizes that so long as the facts constituting the claim or defense are alleged or proved, the party may be granted any relief to which he is entitled under the fact-pleadings and evidence. Cox v. W.M. Heroman & Co., Inc., 298 So.2d 848 (La.1974). Also, La.  C.C.P. art. 2164 authorizes an appellate court to render any judgment which is just, legal and proper on the record, and the case of Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975), mandates this court when a complete record is before it to evaluate the evidence and decide the case in accordance with the evidence. Guided by these precepts, we can fashion relief for the plaintiffs which avoids a remand.
The pleadings and the evidence support a judgment ordering specific performance of the defendants' obligation to pay the assumed indebtedness, and the pleadings and the evidence equally support a finding that the assumed indebtedness is $7,619.53, together with interest at 14 percent from April 15, 1983, until paid. A judgment ordering defendants to pay this indebtedness to the Teche Bank & Trust Co. will accomplish specific performance of the obligation.
Specific performance is a remedy available to plaintiffs under the circumstances of this case. As indicated by the comments under Article 1821 of the La.Civil Code, the jurisprudence has placed assumption of obligations within the general framework of third party beneficiary provisions. Civil Code art. 1981, although new, as indicated by its Comments, does not change the law, and it reads:
"The stipulation gives the third party beneficiary the right to demand performance from the promisor.
"Also the stipulator, for the benefit of the third party, may demand performance from the promisor."
For the foregoing reasons, we amend and recast the judgment of the trial court, to read as follows:
It is ordered, adjudged and decreed that there be judgment in favor of petitioners, Robert G. Hardy and Peggy B. Hardy, and against defendants, Ronald L. Whitney and B.R.P. Brokerage, Inc., jointly, ordering each to pay to the Teche Bank & Trust Co., St. Martinville, Louisiana, one-half of the sum of $7,619.53, plus 14 percent interest from April 15, *772 1983, until paid and all costs of these proceedings.
Defendants will also pay the costs of this appeal.
JUDGMENT AFFIRMED IN PART; AMENDED IN PART; AND RECAST.
LABORDE, J., concurs in the result.
STOKER, J., dissents and assigns reasons.
STOKER, Judge, dissenting.
The majority opinion provides an equitable solution for a situation which requires that some form of relief be given plaintiffs. Because the parties chose a collateral mortgage as a subject for assumption as part of the consideration for a sale, any solution on a sound theoretical basis may be hard to achieve. Plaintiffs sought damages, and I would prefer that a solution be worked out along those lines. Therefore, although I believe plaintiffs are entitled to relief, I respectfully dissent from the ordering of specific performance.